UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JENNIFER SICKLES,
                             Plaintiff,

    v.                                            No. 12-CV-774
                                                   (MAD/CFH)
CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                             Defendant.

---

**APPEARANCES:**                      **OF COUNSEL:**

LACHMAN & GORTON             PETER A. GORTON, ESQ.
Attorney for Plaintiff
Post Office Box 89
1500 East Main Street
Endicott, New York 13761

HON. RICHARD S. HARTUNIAN     MARIA P. FRAGASSI SANTANGELO, ESQ.
United States Attorney for the       Special Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff Jennifer Sickles ("Sickles") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act. Sickles moves for a finding of disability and the Commissioner cross-moves for a

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

judgment on the pleadings. Dkt. Nos. 14, 15. For the reasons which follow, it is recommended that the Commissioner's decision be affirmed.

**I. Background**

**A. Facts**

Born on June 16, 1978, Sickles was thirty years old when she applied for disability benefits. T. 113.[2] Sickles obtained her general educational development ("GED") degree as well as vocational training as a certified nurses' assistant ("CNA"); however that license has since expired. T. 31. Sickles' previous work experience includes food service and being a nurses' aid and teacher's assistant. T. 133. Sickles alleges disability from multiple impairments including degenerative bone disease and bulging discs in her back. T. 132.

**B. Procedural History**

In early May 2009, Sickles filed an application for disability insurance benefits and social security income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. claiming an alleged onset date of February 13, 2009. T. 113-119. That application was denied on September 1, 2009. T. 41-43. Sickles requested a hearing before an administrative law judge ("ALJ"), Robert E. Gale, which was eventually held on February 1, 2011. T. 25-40, 61-62. In a decision dated April 22, 2011, the ALJ held that Sickles was not entitled to disability benefits. T. 7-18. Sickles' counsel filed a timely

---

[2]"T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 10.

request for review with the Appeals Council and on April 20, 2012, the request was denied, thus making the ALJ's findings the final decision of the Commissioner. T. 1-5. This action followed.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Berry, 675 F.2d at 467. Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. 42 USC § 405(g) (2006); Halloran, 362 F.3d at 31.

3

## B. Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . . ." 42 U.S.C. § 423(a)(1) (2004). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

First, the [Commissioner] considers whether the claimant is currently

---

[3] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably." Donato v. Sec 'y of Health and Human Servs., 721 F.2d 414, 418 n. 3 (2d Cir.1983) (citation omitted).

4

engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### C. ALJ Gale's Findings

Sickles, represented by counsel, testified at the hearing held on February 1, 2011. T. 25-40 (transcript from the administrative hearing). Using the five-step disability sequential evaluation, the ALJ found that Sickles (1) had not engaged in substantial gainful activity since February 13, 2009, the alleged onset date; (2) had the following severe medically determinable impairment, degenerative disc disease of the lumbar spine; (3) did not have an impairment, alone or in combination, sufficient to

5

meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintains "the Residual Functional Capacity [("RFC")] to perform slightly less than the full range of light work" and thus, (5) given her age, education, work experience, and RFC, was capable of engaging in employment which exists in significant numbers in the national economy. Therefore, a determination of not disabled was made.

### D. Sickles' Contentions

Sickles first contends that the ALJ failed to properly address the medical opinions and that substantial evidence did not support his conclusions. Sickles also contends that the ALJ improperly evaluated Sickles' credibility, specifically failing to evaluate each of the seven factors required to determine pain level.

### 1. Medical Evidence

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw, 221 F.3d at 134. "This rule applies equally to

6

retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D. Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. § 404.1527(e) (2005).

The ALJ

> g[a]ve significant weight to the reports completed by the treating and examining sources in the record [specifically registered physician assistant D'Angelo; doctor of osteopathy Timothy Jones, orthopedist Kamlesh Desai, and records from the Center for Pain Relief] because their reports were based on examinations of [Sickles] and were consistent with the longitudinal medical evidence . . . reduced weight to the consultative report completed by Justine Magurno, M.D., because her findings are based on a one-time examination of [Sickles] and were inconsistent with the longitudinal medical evidence . . . minimal weight to the questionnaire completed by Xiao Fang, M.D., because there are no supporting treatment notes[,] . . . no indication in the record that he is a treating source[, and] Dr. Fang's report is . . . inconsistent with the longitudinal medical evidence . . .

7

> [and n]o weight is given to the physical residual functional capacity assessment completed by the State Agency analyst because the analyst is not an acceptable medical source.

T. 16. Sickles contends that the bulk of the evidence which the ALJ relied upon was not opinion evidence, rather treatment records, some of which are prior to the period in which Sickles alleges disability. Pl. Memo. of Law (Dkt. No. 14) at 12. Moreover, Sickles states that of the two opinions which were provided to the ALJ, by Drs. Magurno and Fang, neither were accorded significant weight. Id. at 12-13. Lastly, Sickles contends that the ALJ failed to incorporate all of the diagnoses into his decision from the medical evidence upon which he relied. Id. at 13.[4]

Treatment records from Dr. Jones in early 2008 indicated that Sickles often

---

[4] To the extent that Sickles is attempting to claim that the ALJ did not attribute the correct level of severity to the joint pain in her shoulders, knees, and ankles (Pl. Memo. of Law at 13) such arguments are unavailing. Sickles relies on the fact that she was diagnosed with chronic joint pain. T. 194. However, a diagnosis alone is insufficient to establish a severe impairment as instead, the plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work activities. 20 C.F.R. § 404.1521(b). The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs." Id.
    Sickles' medical records indicate that her shoulder pain occurred when she was eleven and was successfully treated with cortisone injections (T. 161 (explaining history of bilateral shoulder pain and bursitis which "does well with intermittent corticosteriod injections.", 163 ("Her bilateral shoulder pain . . . seems to be well controlled at this point in time.")) and that radiology exams from 2008 shows that findings of her ankle were normal (T. 183 ("No evidence of left ankle pathology on the basis of this study.", T. 204 ("[N]o treatment for her foot at present.")).
    Moreover, the same physician who diagnosed chronic joint pain also commented that Sickles was "quite active" (T. 195) with a recommendation "to get back to work . . . [as] she will have enough strength and mobility as well as symptomatic control to get back to work [and] . . . without . . . work . . . she may continue to have overall joint symptoms." (T. 196). Moreover, by Sickles' own account, the pain in her shoulders only occurs "a couple of times a year with [an] unknown trigger," and she chooses not to get treatment and instead wait the spell out. T. 203. Accordingly, such serves as substantial evidence to support the ALJ's decision not to categorize these symptoms as severe, despite a diagnosis of chronic joint pain.

8

arrived at her appointments in obvious pain and moving slowly.  T. 171, 173, 175.  However, Sickles reported that she could complete household chores, although it was difficult with her three children.  T. 175.  An appointment with physicians assistant D'Angelo in June of 2008 showed a pleasant woman with muscle tenderness in her thoracic and lumbar spine, a steady gait, and an impression that her complaints were "on the basis of muscle spasms and perhaps some mechanical back pain due to her line of work as well as taking care of three young children."  T. 163.  A CT scan completed on November 12, 2008 demonstrated "no evidence of disc herniation, spinal stenosis or significant bony hypertrophy[, m]ild degenerative disc bulging at L4-5 level and to a lesser extent L3-4 level[, and m]inor facet degenerative changes without osteophyte formation from L-4 through S-1 levels."  T. 186.  On December 2, 2008, orthopedist Kamlesh Desai conducted an examination where the ultimate diagnosis was chronic joint pain.  T. 194.  However, upon physical exam Dr. Desai noted that Sickles was in no acute distress with a normal gait, required active range of motion exercises and physical activity to treat her joint pain, and was recommended to "get back to work eventually . . . understand[ing] that without getting back into the work force she may continue to have overall joint symptoms."  T. 196.  Sickles was also counseled on proper nutrition, exercises, and vitamin intake.  Id.

     While those records were prior to the alleged date of onset, records from the Pain Management Clinic after the onset date also support the benign radiological findings as well as the ALJ's conclusions that Sickles could perform gainful activity.  In April of 2007, notes from the Center of Pain Relief indicate Sickles' pain rating was a five out of ten and she was ambulating smoothly and steadily. T. 201.  In May of 2009

9

the Pain Center recommended a new pain relief technique, facet medial branch blocks, to see how those would assist in Sickles' pain relief. While not specifically cited to, but while admitted and considered by the ALJ per the hearing testimony (T. 28 (receiving all identified exhibits into the record)), earlier notes from the Pain Center indicate that Sickles was ambulating smoothly and in no acute distress. T. 229, 240.

More telling, however, were progress notes from October 2009 and February 2010, both after the alleged onset date, which indicate that Sickles was feeling fantastic on her medication and was completely off any narcotics which were previously prescribed for pain relief.[5] T. 238-39. Even in November of 2010, with renewed complaints of chronic pain, Sickles was still reporting that her pain level was a three to four out of ten and that her medication did "seem to relieve the symptoms very well." T. 233. As of January 26, 2011, treatment notes from the Comprehensive Pain Relief center indicated that her "[m]idback pain ha[d] resolved," on medication and that she was seeking the option of a spinal objection in conjunction with her other medications. T. 226. Sickles' final treatment notes a few weeks later indicate that Sickles was seeking physical therapy for her back as it "did seem to help her previously," as well as following with her pain management regimen. T. 231. No further notations regarding her back pain were included.

---

[5] Treatment notes indicate that during 2009 Sickles was abusing her narcotic pain medication. T. 226; see also T. 229 (commenting on opioid levels in Sickles' urine and stating that "prescriptions will be discontinued from this office as [provider is] concerned [Sickles] is either abusing or diverting them."), 239 (indicating counseling "regard[ing Sickles'] narcotic addition . . . .). This was not discussed in reference to Sickles' credibility or the severity of her symptomology. However, it does not go unnoticed that after Sickles began taking her medication properly she commented on "feeling the best that she ha[s] felt in many years." T. 239.

Accordingly, reading these treatment notes together, the ALJ determined that Sickles was capable of slightly less than the full range of light work. Sickles contends that there was no opinion evidence relied upon by the ALJ, intimating that the ALJ's decision to compare conclusions with contemporaneous treatment notes was in error. However, the impressions indicated by the examining physicians within those treatment notes constitute medical opinions of treating physicians (1) registered physician assistant D'Angelo; (2) doctor of osteopathy Timothy Jones, (3) orthopaedist Kamlesh Desai, and (4) specialists from the Center for Pain Relief. See Harris, 948 F.3d at 126 (explaining that objective medical facts and clinical findings are among sources of information to be considered when determining disability). Moreover, these opinions represented substantial evidence supporting the ALJ's decisions. Furthermore, these findings in the notes were supported by an extended treatment relationship and the fact that such impressions came from specialists in rheumatology and orthopaedics.

Sickles contends that greater weight should have been given to consultative examiner Dr. Magurno and Dr. Fang. However, the ALJ gave both doctors reduced weight because neither had the same relationship with Sickles as the other treating physicians did. The fact that both doctors were one time consultative examiners is appropriate to note and consider when determining the weight to accord each medical opinion. See Schaal, 134 F.3d at 504 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c))

Moreover, to the extent that Drs. Magurno and Fang's opinions were consistent with the record showing benign findings on the CT scan, decreased pain, and generally normal findings of gait and appearance, such opinions were credited. For example, the ALJ credited some of Dr. Fang's findings as indicated by the parallels between his

11

questionnaire and Sickles' RFC assessment, specifically that Sickles could lift ten pounds up to three hours per day and sit for six hours in an eight hour workday. T. 222-23. The same is to be said for Dr. Magurno's findings that Sickles had a normal gait, did not require help getting on and off the examination table, had mild difficulty raising from the chair, and has mild to moderate limitations for bending, sitting, standing and walking. T. 205-07.

However, to the extent the opinions differed with the medical record, indicating restrictions that were far more severe than those which would be supported by the record evidence, such as marked limitations for lifting and carrying or an opinion that Sickles' medical condition would result in a substantial number of absences from work, they were discredited. T. 207, 222. Such discrediting is further bolstered by the internal inconsistency of Dr. Fang's report, first indicating mild restrictions that Sickles was able to sit six hours and only needed one ten minute rest period per hour or less and then conversely saying that based on her medical condition Sickles would have a substantial number of absences from work. T. 222-23. "When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling." See Snell, 177 F.3d at 133.

Sickles contends that the ALJ's reasoning cannot be properly followed due to a lack of sufficient specificity in this decision. However, "an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." LaRock ex. rel. M.K. v. Astrue, No. 10-CV-1019 (NAM/VEB), 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011) (citing Mongeur v. Heckler, 722 F.2d 1033,1040 (2d Cir. 1983) (internal

quotation marks omitted)). In this case, it is clear that the ALJ's decision to minimally credit the opinions of Drs. Magurno and Fang was supported by substantial evidence. The longitudinal medical record began with relatively normal CT findings and was followed by marked subsequent improvement in pain and symptoms once Sickles' medication was being properly taken. Moreover, even the most recent complaints of pain in the medical record were minimal and conservative methods of treatment, to which Sickles' reported she had success in the past, were subsequently prescribed. Ultimately, Sickles was told that she needed to exercise and get back into the work force, and her subjective improvement and benign objective medical findings support both that treating opinion and the ALJ's ultimate decision denying disability benefits.

Accordingly, the ALJ's decision to accord little evidentiary weight to Drs. Murgano and Fang's assessments was not in error and should be affirmed.

### 2. Subjective Complaints of Pain

The ALJ determines whether an ailment is an impairment based on a two-part test. First, the ALJ must decide, based upon objective medical evidence, whether "there [are] medical signs and laboratory findings which show . . . medical impairment(s) which could reasonably be expected to produce [such] pain. . . ." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 81 (N.D.N.Y. 2005); 20 C.F.R. § 404.1529 (2003). This primary evaluation includes subjective complaints of pain. 20 C.F.R. § 404.1529 (2003). "'Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's

13

capacity to work.'" Barringer, 358 F. Supp. 2d at 81 (quoting Crouch v. Comm'r of Soc. Sec. Admin., No. 6:01-CV-0899 (LEK/GJD), 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003).

An ALJ must consider all symptoms, including pain, and the extent to which these symptoms are consistent with the medical and other evidence. 20 C.F.R. § 404.1529 (2003). The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i)  [The claimant's] daily activities;
>
> (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

Sickles contends that the ALJ erred and improperly assessed her credibility by not specifically enumerating and addressing each of the factors addressed above. First, Sickles contends that the ALJ did not expressly consider her daily activities. The record indicates that Sickles had an inconsistent recitation of what she was able to accomplish daily. In her disability application, Sickles indicated "severe pain," which was worsened by the weather, and prohibited her from sitting or standing for an extended period of time. T. 132. Sickles also indicated that cooking, cleaning, and household chores had become difficult, though she received a lot of help and accomplished her tasks in shifts throughout the day. T. 156. However, Dr. Desai described Sickles as "quite active". T. 195. Further, Sickles told Dr. Magurno that she could cook, clean, do laundry, shop, and tend to her children, though the tasks involved pain. T. 205. During Sickles' testimony, she represented that she could not walk more than ten minutes and on bad days, which occurred during half the month, had difficulty dressing and getting out of bed. T. 30-35.

In contrast to this inconsistent testimony, the ALJ cited to the longitudinal medical evidence with minimal objective findings and conservative treatment, to support his conclusion that Sickles representations were not fully credible. This also ties into Sickles' second argument, alleging error on behalf of the ALJ because he refused to discuss Sickles' issues with various prescribed medications. However, what Sickles fails to proffer is the contemporaneous treatment notes that indicate that, once she was appropriately taking the prescribed medication, she felt "the best that she ha[s] felt in many years." T. 239. Moreover, a subsequent appointment indicated that Sickles' midback pain had resolved (T. 226) and, a year and three months later, treatment notes

15

included a request for additional conservative therapy, indicated that she was continuing to follow with her pain management regimen, and failed to indicate that she was having increased or marked pain in her back again (T. 231). "A longitudinal medical record demonstrating an individual's attempts to seek medical treatment . . . and to follow that treatment once it is prescribed . . . [assists in] judging the credibility of the individual's statements." SSR 96-7p, 1996 WL 374186, at *8. A claimant may be deemed "less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical . . . records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." Id. Accordingly, such conservative treatment and subjective reports of improvement are highly inconsistent with Sickles' present testimony.

As "[i]t is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise credibility of witnesses, . . . [i]f the [Commissioner's] findings are supported by substantial evidence . . . the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec., Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (citations and internal quotation marks omitted). For the reasons stated supra, the record supports the findings of the ALJ that Sickles' "statements concerning the intensity, persistence, and limiting effect of [her pain] are only partially credible . . . ." T. 15.

Further, any failure on behalf of the ALJ to specifically outline the effects of Sickles' activities of daily living or medication interactions is nothing more than harmless error, as his credibility decision is amply supported by the aforementioned evidence.

Rockwood v. Astrue, 614 F. Supp. 2d 252, 271 (N.D.N.Y. Apr. 30, 2009) (citations omitted).

Accordingly, the ALJ did not err in assessing Sickles' credibility, as the determination is supported by substantial evidence. Therefore, the Commissioner's decision should be affirmed.[6]

---

[6] Sickles' contended that because her credibility was incorrectly evaluated, the RFC was no longer supported by substantial evidence. As the credibility determination was upheld, Sickles' final, conclusory argument need not be addressed as it is moot.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Sickles' motion for judgment on the pleadings (Dkt. No. 14) be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

It is further **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Date: October 3, 2013
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge