**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JENNIFER SICKLES,**

                                        **Plaintiff,**

            **vs.**                                          **12-CV-774**
                                                            **(MAD/CFH)**

**CAROLYN W. COLVIN, Acting Commissioner**
**of Social Security,**

                                        **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**LACHMAN & GORTON**                 **PETER A. GORTON, ESQ.**
Post Office Box 89
1500 East Main Street
Endicott, New York 13761
Attorneys for Plaintiff

**HON. RICHARD S. HARTUNIAN**      **MARIA P. FRAGASSI SANTANGELO**
United States Attorney for the             Special Assistant United State Attorney
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261-7198
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        Plaintiff Jennifer Sickles brought this action pursuant to 42 U.S.C. § 405(g), seeking a

review of the Commissioner of Social Security's ("Commissioner") decision to deny her

application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under

the Social Security Act, 42 U.S.C. § 401 *et seq.* The matter was referred to United States

Magistrate Judge Christian F. Hummel for a Report-Recommendation and order pursuant to 28

U.S.C. § 636(b) and Local Rule 72.3(d). Magistrate Judge Hummel recommended that this Court

affirm the decision of the Commissioner denying Plaintiff's application for benefits and dismiss Plaintiff's complaint. Presently before the Court is Plaintiff's objection to the Report-Recommendation and Order. *See* Dkt. No. 21.

## II. BACKGROUND

### A. Facts

Born on June 16, 1978, Plaintiff was thirty years old when she applied for disability benefits. Plaintiff obtained her general educational development ("GED") degree as well as vocational training as a certified nurses' assistant ("CNA"); however that license has since expired. Plaintiff's previous work experience includes food service and being a nurse's aid and teacher's assistant. Plaintiff alleges disability from multiple impairments including degenerative bone disease and bulging discs in her back.

### B. Procedural History

Plaintiff filed applications for DIB on May 6, 2009, and for SSI on May 7, 2009, pursuant to the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming an alleged onset of her disability as of February 13, 2009. Dkt. No. 9-2 at 11. Those applications were denied on September 2, 2009. Dkt. No. 9–3 at 2–4. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was eventually held on February 1, 2011, through video conference before Administrative Law Judge Robert E. Gale. Dkt. No. 9–2, 26; Dkt. No. 9–4 at 19. In a decision dated April 22, 2011, the ALJ held that Plaintiff was not disabled under 42 U.S.C. § 216(i) and § 223(d) of the Social Security Act, and therefore was not entitled to disability benefits. Dkt. No. 9-2 at 19. Plaintiff's counsel filed a timely request for review with the Appeals Council. On April 20, 2012,

the Appeals Council affirmed the ALJ's decision, thus making the ALJ's findings the final decision of the Commissioner. Dkt. No. 1 at3.

On May 9, 2012, Plaintiff sought review of the Commissioners's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) by the United States District Court of the Northern District of New York. The matter was referred to United States Magistrate Judge Christian F. Hummel pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). In a Report-Recommendation and Order issued on October 3, 2013, Magistrate Judge Hummel recommended that Plaintiff's motion for a finding of disability be denied and the Commissioner's motion for judgment on the pleadings be granted. Thereafter, on October 22, 2013, Plaintiff's counsel submitted objections to the Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b)(1).

## C.    Report-Recommendation and Order

In his the Report-Recommendation and Order Magistrate Judge Hummel held that: 1) the ALJ's decision to accord little evidentiary weight to the assessments conducted by Doctors Magurno and Fang was not in error and in doing so, the ALJ did not err in, a) addressing the medical opinions, and b) finding that there was substantial evidence to support his conclusions; and 2) the ALJ did not err in assessing Plaintiff's credibility by failing to evaluate required factors to determine pain level as the determination was supported by substantial evidence. Dkt. No. 18, 17.

As best as this Court is able to decipher from Plaintiff's Brief in Support of Objections ("Plaintiff's Objections"), Plaintiff has objected to the Report-Recommendation and Order on the following grounds:

I.      The ALJ erred in his RFC determination because the administrative record does not contain sufficient "medical opinions" to support the ALJ's decision or the Magistrate Judge's affirmation of that decision;

II.      The ALJ erred in his RFC determination because he ignored the only medical opinions of record as to the period during which Plaintiff could not work;

III.      The ALJ erred in his RFC determination because Defendant's expert witness, as a treating source, provided an assessment of Plaintiff that precludes the ALJ's RFC determination;

IV.      Magistrate Judge Hummel incorrectly affirmed the ALJ's credibility determination;

V.      The ALJ erred in his credibility determination because he failed to indicate in his decision whether Plaintiff's daily activities were taken into account;.

VI.      The ALJ erred in his credibility determination because he misconstrued Plaintiff's statements;

VII.      The ALJ erred in his credibility determination because he failed to specifically mention all of the factors required in a credibility by regulation; and

VIII.      The ALJ erred in his credibility determination because his decision to accord less than controlling weight to Plaintiff's testimony was based purely on the ALJ's assessment of the medical records differing from the assessments of Doctors Magurno and Fang.

*See* Dkt. No. 21.

## III. DISCUSSION

### A.      Standard of Review

When reviewing the Commissioner's final decision, the court must determine whether the Commissioner applied the correct legal standards and whether substantial evidence supports the decision. *See Urtz v. Callahan*, 965 F. Supp. 324, 326 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Although the Commissioner is ultimately responsible

for determining a claimant's eligibility for benefits, an ALJ makes the actual disability determination; and that decision is subject to judicial review on appeal. A court may not affirm an ALJ's decision if it reasonably doubts that the ALJ applied the proper legal standards, even if it appears that there is substantial evidence to support the ALJ's decision. *See id.* (citing [*Johnson*, 817 F.2d] at 986). Additionally, the ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted).

A court's factual review of the Commissioner's decision is limited to the determination of whether substantial evidence in the record supports the decision. *See* 42 U.S.C. § 405(g); *see also Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quotations omitted). It must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

**B.      Supplemental Security Income**

Every individual who is insured for disability insurance, has not attained retirement age, has filed application for disability insurance benefits, and is disabled shall be entitled to a disability insurance benefit for each month beginning with the first month after his waiting period in which he becomes so entitled to such insurance benefits. *See* 42 U.S.C. § 423. 42 U.S.C. § 423(d)(1)(A), in pertinent part, defines "disabled" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." The definition is

functionally identical to that which is set forth in 42 U.S.C. § 1382c; 42 U.S.C. § 416(i); 20

C.F.R. § 404.1505(a).  While, 42 U.S.C. § 423(c)(2), in pertinent part, defines "waiting period" as

"the earliest period of five consecutive calendar months throughout which the individual with

respect to whom such application is filed has been under a disability and which begins not earlier

than with the first day of the seventeenth month before the month in which such application is

filed if such.  The plaintiff carries the initial burden of proving that he or she is disabled within

the meaning of the Act.  *See* 42 U.S.C. § 423(d)(5)(A); *see also Draegert v. Barnhart*, 311 F.3d

468, 472 (2d Cir. 2002).

The Commissioner follows a five-step process to evaluate disability claims, determining

the following:

> (1) whether the claimant is currently engaged in substantial gainful
> activity – if so, the claimant is not disabled, (2) whether the
> claimant has a severe impairment that limits the claimant's mental
> or physical ability to do basic work activities, (3) if the claimant has
> a severe impairment, whether the claimant has a "listed
> impairment" (an impairment listed in 20 C.F.R., Part 404, Subpart
> P, Appendix 1) – if so, there is an irrebuttable presumption of
> disability, (4) if the impairment is not "listed", whether the claimant
> has residual functional capacity to perform the claimant's past work,
> notwithstanding the claimant's severe impairment, and (5) if the
> claimant is unable to perform past work, whether there is other
> work the claimant would be able to perform.

*Credle v. Apfel*, 4 Fed. Appx. 20, 22 (2d Cir. 2001) (citing *Shaw v. Carter*, 221 F.3d 126, 132 (2d

Cir. 2000) (summarizing five-step analysis under 20 C.F.R. §§ 404.1520, 416.920)); *see also*

*Sweet v. Astrue*, 510 Fed. Appx. 26, 27-28 (2d Cir. 2013) (quoting *Rivera v. Schweiker*, 717 F.2d

719, 722 (2d Cir. 1983)).  "The claimant bears the burden of proof at steps one through four; at

step five, the SSA bears a limited burden, but 'need only show that there is work in the national

economy that the claimant can do; [it] need not provide additional evidence of the claimant's

residual functional capacity.'"  *Pellam v. Astrue*, 508 Fed. Appx. 87, 89 (2d Cir. 2013) (quoting

*Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)).

Plaintiff's various contentions surround the grounds upon which the ALJ based his RFC

determination, and Magistrate Judge Hummel's affirmation of that determination.

## C.    Medical Opinions

Plaintiff contends that the administrative record does not contain sufficient "medical

opinions" to support the ALJ's decision.  Dkt. No. 21 at 1.  Specifically, Plaintiff argues that the

evidence in the record, representing Plaintiff's medical history from 6/20/08 through 5/27/09,

exhibits 1F–4F, do not constitute or contain "medical opinions" upon which the ALJ could rely as

a basis for the RFC determination.  *Id.* at 1.

Plaintiff's assertion appears to center around a distinction she has drawn, without

meaningful clarification, between "medical opinions" and the remainder of the evidence in the

record.  She contends the only actual "medical opinions" contained in the administrative record

are those of Doctors Justine Magurno and Xiao Fang.  Plaintiff, however,  has not offered any

rationale, beyond conclusory allegations, to support her argument that the portions of the record

relied upon by the ALJ do not constitute "medical opinion."[1]

Even if Plaintiff had offered any noteworthy rationale as to the insufficiency of the ALJ's

reliance on portions of the administrative record as "medical opinions," this Court does not find

the definition of what constitutes  "medical opinion", for purposes of RFC determinations, to be

---

[1] Plaintiff ignores the fact that the documentation concerning diagnostic or preventative medicine, involving visual diagnosis, diagnosis by interpretation of laboratory data, treatment, observations about prescribed treatments, or the patients progress, etc., is at its most basic level nothing more than a medical professionals account of what they perceived, made through the lense of their medical training, in their empirical observations of a patient.  Or more simply, what a medical professional observes or does, within the scope of their profession, is medical opinion.

so narrowly interpreted that it requires an adoption of Plaintiff's implied distinction and a finding of error on behalf of the ALJ. A medical opinion, for purposes of an ALJ's disability determination, is defined as evidence,[2] submitted to or obtained by the ALJ, containing "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [] symptoms, diagnosis and prognosis," the claimant's capabilities despite the impairment(s), and any physical or mental restrictions. 20 C.F.R. § 404.1527. The regulatory language provides ample flexibility for the ALJ to consider a broad array of evidence as "medical opinions." *See* 20 C.F.R. § 404.1527. As such this Court agrees with Magistrate Judge Hummel that the impressions

---

[2] The Social Security Act requires a claimant to prove to the commissioner that he or she is in fact disabled by furnishing medical and other evidence that an ALJ can use to reach conclusions about the claimant's medical impairment(s). 20 C.F.R. § 404.1512(a). The Social Security Act provides that the definition of "evidence" includes, but is not limited to, (1) Objective medical evidence, that is, medical signs and laboratory findings; (2) other evidence from medical sources, such as medical history, opinions, and statements about treatment [the claimant] has received; (3) statements [the claimant] or others make about [the claimant's] impairment(s), their restrictions, their daily activities, their efforts to work, or any other relevant statements [the claimant] make[s] to medical sources during the course of examination or treatment, or to the administration during interviews, on applications, in letters, and in testimony in administrative proceedings; (4) information from other sources; (5) decisions by any governmental or nongovernmental agency about whether [the claimant is] disabled or blind; (6) at the initial level of the administrative review process, when a State agency disability examiner makes the initial determination alone (*see* § 404.1615(c)(3)), opinions provided by State agency medical and psychological consultants based on their review of the evidence in [the claimant's] case record; (7) at the reconsideration level of the administrative review process, when a State agency disability examiner makes the determination alone (*see* § 404.1615(c)(3)), findings, other than the ultimate determination about whether [the claimant is] disabled, made by State agency medical or psychological consultants and other program physicians, psychologists, or other medical specialists at the initial level of the administrative review process, and other opinions they provide based on their review of the evidence in [the claimant's] case record at the initial and reconsideration levels (*see* § 404.1527(f)(1)(iii)); and (8) at the administrative law judge and Appeals Council levels, findings, other than the ultimate determination about whether [the claimant is] disabled, made by State agency medical or psychological consultants and other program physicians or psychologists, or other medical specialists, and opinions expressed by medical experts or psychological experts that we consult based on their review of the evidence in the claimant's] case record (*see* §§ 404.1527(f)(2)–(3)). 20 C.F.R. § 404.1512(b).

indicated by the examining physicians within treatment,, and progress notes, found in exhibits 1F–4F, constitute the medical opinion of treating physicians. The Court finds that the ALJ operated under the correct legal standard, and that Magistrate Judge Hummel correctly determined that the Court should affirm the ALJ's determination.

### *1. Temporal Relevance of Medical Opinions of Record*

Plaintiff also contends that the ALJ erred in his RFC determination because he ignored the only medical opinions of record as to the period during which Plaintiff could not work. The scope of evidence an ALJ may review in a claimant's RFC determination is not so narrow as to constrain their scrutiny or analysis to only opinions that concern the plaintiff's functional capacity during the alleged period of disability. *See* 20 C.F.R. § 416.912(d)–(e) (providing temporal guidelines for the development of the administrative record as it pertains to the plaintiff's medical history); *see also* 20 C.F.R. § 416.945(a)(3) (providing scope of the evidence and ALJ may consider in RFC determinations). Before the ALJ makes a determination regarding whether a plaintiff is disabled, the ALJ has the responsibility to adequately develop a plaintiff's complete medical history. *See* 20 C.F.R. § 416.912(d). Development of a complete medical history entails obtaining the records of the plaintiff's medical source(s) covering *at least* twelve months preceding the month in which the plaintiff filed the application for benefits. *Id.* Or, as is the case here, if the onset of disability is alleged to have occurred less than twelve months before the plaintiff's application was filed, the ALJ must develop the plaintiff's complete medical history beginning with the month the plaintiff states the disability began. *Id.*

The plaintiff's medical history is not the exclusive basis for an ALJ's disability determination. "Objective and subjective factors are to be considered by the [ALJ] when

evaluating a conclusion of disability. These factors include: (1) objective medical facts; (2) diagnoses or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the claimant and family or others; and (4) the claimant's educational background, age, and work experience." *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983). The ALJ is required to base an RFC determination "on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). In doing so, the ALJ "will consider any statements about what [a claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations." *Id.*

Plaintiff filed her applications for DIB and SSI on May 6, 2009, and May 7, 2009, respectively, asserting in both an onset of disability on February 13, 2009. Dkt. No. 9–2 at 11. The medical history in the record extends from November 11, 2006, until February 24, 2011. Dkt. No. 9–7 at 19, 61. The record was appropriately developed, and the examination and reliance on the records cited by the ALJ was within the appropriate standard. As such, the ALJ did not err insofar as he relied upon medical opinions pertaining to periods before the alleged onset of disability.

### 2. Controlling Weight of Medical Opinions

While the ALJ appropriately relied on the medical and other evidence in the record in coming to his RFC determination, Plaintiff contends Defendant's expert witness, as a treating source, provided an assessment of her that precludes the ALJ's RFC determination. Dkt. No. 21 at 4. Specifically, Plaintiff argues that Dr. Magurno's determination that Plaintiff has marked limitations for lifting and carrying would limit Plaintiff to no more than sedentary work, and her moderate limitation in sitting would subsequently preclude her from engaging in even sedentary

work. Dkt. No. 21 at 2. The inference Plaintiff appears to be asking this Court to draw is that the medical opinion and objective medical evidence garnered from Dr. Magurno's examination on August 17, 2009, and Dr. Fang's functionality assessment, completed on February 24, 2011, should have been given controlling weight and thus should have precluded the ALJ from arriving at his RFC determination.

While an ALJ is required to, "regardless of its source, . . . evaluate every medical opinion . . . receive[d]," when a plaintiff's treating source's opinion regarding the nature and severity of a plaintiff's impairment(s) is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the ALJ will give controlling weight to medical opinions offered by the plaintiff's treating sources.[3] 20 C.F.R. § 404.1527. If, however, the treating source's opinion is found to be inconsistent with the other substantial evidence in the case record, it will not be given controlling weight and is then reviewed by the ALJ, in light of the following factors: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors. *Schaal v. Apfel*, 134 F.3d 496, 503–04 (2d Cir. 1998); *see* 20 C.F.R. § 404.1527. Upon issuing a notice of determination or a decision as to the weight accorded to the treating source's opinion, the ALJ must provide good reasons for doing so. *Id.* Though ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. *Snell v. Apfel*, 177 F.3d 128, 133–34 (2d Cir. 1999); *see also*

---

[3] This is typically the case because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individuals examinations, such as consultative examinations or brief hospitalization." 20 C.F.R. § 404.1527(c)(2).

20 C.F.R. § 404.1527(e).

### a. The Medical Opinion of Dr. Magurno

The ALJ stated that he gave "reduced weight to the consultative report completed by Justine Magurno, M.D., because her findings are based on a one-time examination of the claimant and are inconsistent with the longitudinal medical evidence (Exhibit 5F)." Dkt. No. 9-2 at 17. On August 17, 2009, upon referral from the Division of Disability Determination, Plaintiff was examined by Dr. Magurno. Dkt. No. 9-7 at 44. At the time, Plaintiff reported having back pain that "constantly ached with occasional sharp pain," which at the time she rated at a seven out of ten. *Id.* Plaintiff therein related to Dr. Magurno that her daily activities consisted of her cooking, cleaning, doing laundry, shopping, caring for her children, showering, getting dressed, and watching TV. *Id.* The report indicates that Plaintiff was alleging pain during all of these activities that at times would preclude her from engaging in any or all of them. *Id.* at 46. Plaintiff stated that her pain would worsen if she was seated, standing or walking. *Id.* Plaintiff further stated that she has pain related to arthritis in her knees, pain related to arthritis in her hands, pain and crepitus[4] in her wrists, pain related to bursitis[5] in both of her shoulders, pain related to post surgical issues with one foot, and the onset of numbness in her right thumb, index and middle

---

[4] "Crepitus is the sophisticated medical term used to explain the popping, grating or cracking sensation that can be heard or felt upon percussion of joints or skin, which indicates the presence of air accumulation inside the closed and compact subcutaneous tissue or joint surface." *Crepitus*, NEW HEALTH GUIDE, http://www.newhealthguide.org/Crepitus.html (last visited January 24, 2014).

[5] Bursitis is the inflammation or irritation of the bursa. The bursa is a sac filled with lubricating fluid, located between tissues such as bone, muscle, tendons, and skin, that decreases rubbing, friction, and irritation. *Bursitis*, WEB MD, http://www.webmd.com/pain-management/arthritis-bursitis (last visited January 24, 2014).

fingers upon use of a computer mouse. *Id.* Dr. Magurno also reported that she stated that medication was of some help. *Id.* At the time of the examination, Plaintiff reported being prescribed Vicoprofen[6] once every 6 hours as needed, Oysco 500 plus D[7] once daily, Nucynta 100mg[8] twice daily, and Lidoderm patches[9] as needed.

During the examination, Dr. Magurno noted that Plaintiff appeared to be in no acute distress, her gait, station, and appearance were normal, and she was able to heel walk normally, although she found toe walking painful, her stance was normal, her squat was half, and the braces she alleged to require for her wrists were not present. Dkt. No. 9-7 at 46. Further, Plaintiff did not need assistance getting on or off the exam table, although she exhibited "mild difficulty rising from a chair." *Id.*

---

[6] Vicoprofen is a combination of Hydocodone and Ibuprofen. *Vicoprofen oral*, WEB MD, http://www.webmd.com/drugs/drug-4635-Vicoprofen+oral.aspx?drugid=4635&drugname=Vicoprofen+oral&source=1 (last visited January 24, 2014). "This combination medication is used for a short time (usually less than 10 days) to help relieve moderate to severe pain. It contains a narcotic pain reliever (hydrocodone) and a nonsteroidal anti-inflammatory drug-NSAID (ibuprofen). Hydrocodone works in the brain to change how your body feels and responds to pain. Ibuprofen reduces pain and fever." *Id.*

[7] "This combination medication is used to prevent or treat low blood calcium levels in people who do not get enough calcium from their diets." *Oysco 500/D oral*, WEBMD, http://www.webmd.com/drugs/drug-2801-Oysco+500%2FD+Oral.aspx?drugid=2801&drugname=Oysco+500%2FD+Oral (last visited January 24, 2014).

[8] Nucynta, generically known as tapanedal, "is a narcotic pain reliever (opiate-type), . . . used to treat moderate to severe short-term pain (such as pain due to injury or following surgery)" and in some instances is used to treat nerve pain. *Tapentadol oral*, WEB MD, http://www.webmd.com/drugs/mono-1209-TAPENTADOL+-+ORAL.aspx?drugid=152562&drugname=tapentadol+oral&source=2 (last visited January 24, 2014).

[9] "Lidoderm (lidocaine patch 5%) is comprised of an adhesive material containing 5% lidocaine. *Lidoderm*, Rxlist, http://www.rxlist.com/lidoderm-drug.htm (last visited January 24, 2014). The patches are prescribed for the temporary relief of minor muscle and joint aches and pains caused by arthritis, simple backache, strains, tendon problems, or nerve problems." *Lidocaine patch*, DRUGS.COM, http://www.drugs.com/cdi/lidocaine-patch.html (last visited January 24, 2014).

Plaintiff's account of what positions exacerbated or relieved her pain vary throughout the administrative record. Dkt. No. 9–7 at 16 (4/29/08 everything exacerbates back pain); *id.* at 13 (09/10/08 sitting relieves back pain, laying down or standing exacerbates pain); *id.* at 11 (9/23/08 sitting relieves back pain, laying down exacerbates pain, no indication standing is an issue); *id* at 6 (10/29/08 cannot stand erect due to pain); *id.* at 36 (12/02/08 prolonged sitting aggravates back pain); *id.* at 44 (8/17/2009 sitting and standing exacerbate pain symptoms, medication helps relieve pain); *id.* at 67 (1/26/11 sitting exacerbates pain, sitting *also* relieves pain); Dkt. No. 9–2 at 34–35 (stating that if Plaintiff engages in more than five to ten minutes of walking on level ground she needs to lie down with a heat pack or sit in a recliner to rest). The medical records are also inconsistent regarding Plaintiff's own account of what her pain would preclude her from doing. *See id.* at 13. In 2008, Plaintiff indicated that her pain, at the time, would prevent her from doing household chores or being active, but she failed to indicate that it would prevent her from going to work or engaging in intimate relations. *See id.* at 13, 16. In her 2009 hearing before the ALJ Plaintiff indicated that her back and other pain prevented her from engaging in the following activities for more than five to fifteen minutes without having to rest for fifteen minutes, or in some instances needing to rest after single iterations: washing the dishes, cleaning, sweeping, using a writing implement, cooking, taking care of her children, counting money, paying bills, using a computer mouse, getting dressed, buttoning her blouse, showering, concentrating, walking on level ground, standing, sitting on a bus, operating a cash register, and conducting household finances with either written instrument or a computer. *See* Dkt. No. 9-2. Plaintiff alleges this is the extent of her capabilities on good days, which occur on half the days of the month; on bad days, she is bedridden for the entire day. *Id.* at 41.

On April 27, 2009, after the alleged onset date of disability, Plaintiff was again treated at

the Comprehensive Pain Relief Center by Nurse Practitioner Cori Pane. Dkt. No. 9–7 at 42. N.P. Pane noted that Plaintiff was a "well developed and well nourished white female looking her stated age of thirty in a pleasant mood, appropriate effect, in no acute distress, and ambulating with a smooth, steady gait." *Id.* at 41. On October 19,2009, Plaintiff, again saw N.P. Pane. *Id.* at 70. Plaintiff reported having pain that she rated as a five on the VAS pain scale. *Id.* at 70. N.P. Pane indicated that Plaintiff had been prescribed Norco to be taken six times per day. *Id.* After questioning Plaintiff regarding the use of the medication, the record states that the "medical office assistant" ordered a urine screen of Plaintiff. *Id.* The urine screen returned a negative result for opiod levels in Plaintiff's urine. *Id.* Plaintiff alleged that she was taking less than the prescribed amount as one of her other medications, tramadol, was providing sufficient relief. *Id.* Concerned that Plaintiff was either "abusing or diverting" the medication, N.P. Pane told Plaintiff that if she did not return the medication by the end of the following business day her prescriptions would be discontinued. *Id.*

The record indicates that Plaintiff did not return to the Pain Relief Center for more than two years. On January 26, 2011, N.P. Pane again examined Plaintiff, noting that Plaintiff still appeared to be in no acute distress. *Id.* at 68. N.P. Pane noted that the Plaintiff "admits she didn't return to our practice in 2009 because she was over-using her Norco[10] and was embarrassed to return." *Id.* at 67. This is corroborated by the Lourdes Progress notes dated October 22, 2009, October 29, 2009, and February 16, 2010, where Primary Care Nurse Practitioner Kelly Storrs saw Plaintiff. *Id.* at 79–81. In these examinations, N.P. Storrs noted that Plaintiff wanted to

---

[10] Norco contains a combination of acetaminophen and hydrocodone. Both medicines are pain killers. Hydrocodone is an opioid pain medication. An opioid is sometimes called a narcotic. Acetaminophen is a less potent pain reliever that increases the effects of hydrocodone. *Norco*, Drugs.com, http://www.drugs.com/norco.html (last visited February 10, 2014).

cease using her narcotic painkillers, that she understood she had a narcotic addiction, and that in the February meeting continued to be concerned about staying off narcotic medication. *Id.* In the October 29, 2009 consultation, Plaintiff stated that she was feeling the best she had in a very long time. *Id.* at 80. Furthermore, the record documents that Plaintiff's mid-back pain had since resolved itself and that she was now taking tramadol on an as needed basis. *Id.* at 79–81. Interestingly, the treatment record also notes that Plaintiff stated that her pain symptoms were aggravated by daily activities, sitting, standing, and walking but relieved by heat, stretching, sitting, and moving around. *Id.*

The longitudinal evidence, both prior to and after the date of the alleged onset of disability, lends itself to being considered contradictory. In almost every consultation the examining individual noted a pleasant and attentive woman, representative of her age, with a normal gait and station who was not in any acute distress and who was ambulating normally. The pain severity reported by Plaintiff varied, the location of the pain, in some cases varied, and the correlating adherence to pain management throughout the administration of narcotic pain killers and NSAIDs diverged. Specifically, after the onset of the most severe symptoms, as related in the hearing with the ALJ, Plaintiff alleged to have been adhering to her narcotic prescription. However, in consultation with the nurse practitioner, she stated she was only taking them on an as needed basis because one of her non-narcotic medications was sufficient. Furthermore, after she was screened for opioid levels in her system, she tested negative. This was followed by a roughly two year absence from the Center for Pain Relief, and during that absence, in examinations at Lourdes by N.P. Storrs, she admitted to having a narcotics addiction. Examined in the aggregate, the evidence would allow a reasonable mind to draw the inference that Plaintiff's behavior was not indicative of someone then suffering from pain of the severity alleged. Therefore, the ALJ

could reasonably determine that the medical opinion provided by Dr. Magurno is inconsistent with the remainder of the substantial evidence in the record and was correctly given reduced weight. As this Court must show deference to the decision made by the ALJ where supported by substantial evidence, even where the plaintiff may have alleged a plausible interpretation that is divergent from that of the ALJ, this Court hereby concludes that the ALJ did not err in according Dr. Magurno's opinion a reduced level of probative weight.

### b. The Medical Opinion of Dr. Fang

The ALJ gave minimal weight to the questionnaire completed by Xiao Fang, M.D, reasoning that "because there are no supporting treatment notes and no indication in the record that he is a treating source. (Exhibit 8F). Dr. Fang's report [was] also inconsistent with the longitudinal medical evidence in the record." Dkt. No. 9–2 at17. Plaintiff contends that Magistrate Judge Hummel erred in his reliance upon the treatment notes contained in the medical record in affirming the ALJ's RFC determination. Specifically, Plaintiff appears to be again reasserting that there were no medical opinions, as she defines them, to support the ALJ's decision. Plaintiff appears to be further asserting that because Dr. Fang's medical opinion provided an assessment as to Plaintiff's functionality, one which was based upon the medical record, it would preclude the ALJ from coming to a contrary conclusion in relying upon the medical record. In fact, by finding a functional capacity contrary to what Plaintiff perceives the opinion of Dr. Fang to impart, the Plaintiff alleges that the ALJ "substitut[ed] his opinion for that of the opinions of record." Dkt. No. 21 at 3.

For the reasons set forth above, the Court rejects Plaintiff's argument as it pertains to the treatment records not expressing medical opinions. Under the Social Security Act, the ALJ is

required to evaluate "all of the relevant medical and other evidence" in coming to his RFC determination. 20 C.F.R. § 416.945(a)(3). There is no regulatory language present in the Social Security Act to support Plaintiff's argument that the ALJ must utilize medical opinion evidence that specifically references the claimants *capacity* for work as the sole basis for his RFC determination. There are certainly standards to ensure that the ALJ accords each particular piece of evidence the appropriate amount of probative weight. This Court finds that the ALJ was within those standards and did not err in according Dr. Fang's questionnaire minimal weight.

On February 24, 2011, Dr. Fang completed a document titled "Questionnaire" concerning his objective evaluation of the extent to which the limitations Plaintiff alleged to have were consistent with the physical condition the medical professionals at the clinic observed the patient to have. *See* Dkt. No. 9–7 at 63. The questionnaire documents that: 1) if Plaintiff were to return to repetitive work activity, she would require a sit or stand option and would require one 10 minute rest period per hour or less; 2) that her limitations would likely cause her to be absent from her place of employment four or more times per month; 3) that sitting was impacting Plaintiff's condition; 4) that Plaintiff could sit for six hours out of an eight hour work day, but notes that she must alternate between sitting and standing; 5) that standing and walking were impacting her condition; 6) that the Plaintiff could stand for at least two hours out of an eight hour work day; 7) that she could lift five to ten pounds for up to three hours per day; 8) that although her concentration and her ability to sustain her work pace would be impacted by twenty percent or more, her limitations would not preclude her from work; and 9) and that her ultimate diagnosis was chronic back pain. *Id.*

The amount of probative weight to be accorded to a medical opinion is determined by the extent of the relationship between the physician and the patient. Generally, if the ALJ "find[s]

that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527 (c)(2). When such a relationship is not established, however, the ALJ is required to apply several factors in determining the weight to give the opinion. *See id.*

The Court agrees that the evidence does not establish that Dr. Fang ever acted in the capacity of a treating physician. Therefore, it was appropriate for the ALJ not to accord controlling weight to the opinion. The evidence is inconclusive as to whether Dr. Fang was in the presence of the patient when the questionnaire was completed. The record contains a single record — a treatment note generated by N.P. Pane on February 2, 2011 — mentioning that Plaintiff would undergo a disability assessment by Dr. Fang. Dkt. No. 9–2 at 38. Plaintiff uses the same to assert that it is the Pain Center's policy to have Dr. Fang perform disability evaluations of patients based upon the records — treatment notes — kept at the center. Dkt. No. 21 at 3. However, the evidence demonstrates, and as Plaintiff has asserted in her own testimony and submissions to the Court, that Dr. Fang only performed a single evaluation. The relationship between Dr. Fang and Plaintiff is completely devoid of the aspects, indicated by 20 C.F.R. § 404.1527(c)(2), that form the basis for the Social Security Act's preference towards according a treating physician's opinion controlling probative weight. Furthermore, the questionnaire is woefully devoid of details that would be indicative of an intimate knowledge with Plaintiff's longitudinal medical history. Therefore, the Court agrees that the evidence fails to establish that Dr. Fang ever acted in the capacity of a treating physician and the ALJ's decision is supported by substantial evidence.

Even if Dr. Fang was a treating physician this Court agrees with the ALJ that the opinion of Dr. Fang was inconsistent with the other substantial evidence of record. Based upon the singular nature of the exam, the lack of conclusive, consistent, and corroborating accounts of the severity and persistence of symptoms inasmuch as they accurately correlate to the physical findings of the medical professionals and their objective notes, the ALJ's decision to accord minimal weight is thus supported by substantial evidence. *Schaal v. Apfel*, 134 F.3d 496, 503–04 (2d Cir. 1998); 20 C.F.R. § 404.1527.

For the reasons set forth above, the ALJ's evaluation of, and weight afforded to, the opinions of Doctors Magurno and Fang was supported by substantial evidence and within the appropriate legal standard. Thus, this Court finds that the ALJ did not substitute his own opinion for medical opinions of record.

**D.    Credibility Determination**

Plaintiff alleges that Magistrate Judge Hummel incorrectly recommended that the Court affirm the ALJ's credibility determination. Credibility determinations concern a plaintiff's alleged symptoms, such as pain, their intensity and persistence and the functional limitation(s), if any, that are attendant to them, and how they affect an ALJ's RFC determination. *See* 20 C.F.R. § 416.929. As a gateway issue to credibility determinations, the plaintiff must establish, through supporting medical signs or laboratory findings, the existence of a medically determinable impairment that could reasonably cause symptoms of the type alleged. *See* 20 C.F.R. § 416.929(b).

In this case, it is not in dispute that Plaintiff has been found to have degenerative disc disease of the lumbar spine; nor is it disputed that the type of symptoms she alleges may

reasonably be attributed to that impairment. Dkt. No. 9–2 at 15. What is in dispute is the credibility of her accounts of the severity and persistence of her symptomatic pain and the functional limitations they cause her.

An ALJ must evaluate the intensity and persistence of those symptoms and any functional limitations attendant to them in order to determine how they affect a claimant's capacity for work. *See* 20 C.F.R. § 416.929(c)(1). Since, symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the ALJ must carefully consider any other information submitted by the claimant for its consistency with any and all relevant evidence. *See* 20 C.F.R. § 416.929(c)(3). A claimant's statement(s) about the intensity and persistence of a particular symptom, such as pain, or about the limiting effects the symptoms have on their ability to work will not be rejected solely because the available objective medical evidence does not substantiate a claimant's statement(s). *See* 20 C.F.R. § 416.929(c)(2). "However, the ALJ is not obliged to accept without question the credibility of such subjective evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (citing *Martone v. Apfel,* 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999)) (internal citation omitted). "When such [statements are] consistent with and supported by objective clinical evidence demonstrating that [the] claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 439-40 (N.D.N.Y. 2008) (citations omitted).

If this is found not to be the case, as was found here by the ALJ, the "ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to

relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms." *Rockwood*, 614 F. Supp. at 271 (citing 20 C.F.R. §§ 416.929(c)(3)(i)-(vii)).  In doing so, the ALJ will "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 416.929(c)(4).  The claimant's symptoms will "be determined to diminish [their] capacity for basic work activities . . . to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c)(4).

### 1. Specificity of an ALJ's Decision

Plaintiff first argues that the ALJ failed to indicate in his decision whether Plaintiff's daily activities were taken into account during the ALJ's credibility determination.  "An ALJ rejecting subjective testimony 'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12-CV-1631, 2014 WL 420465 (N.D.N.Y. Feb. 4, 2014) (quoting *Melchior v. Apfel,* 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998)).  Further, the Agency rules provide that

> [i]t is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the

> individual and to any subsequent reviewers the weight the
> adjudicator gave to the individual's statements and the reasons for
> that
> weight.

SSR 96–7p, 1996 WL 374186, at *2.

In his decision, the ALJ addresses Plaintiff's symptoms, their severity, and functional limitations attendant to them. Dkt. No. 9–2 at 15. The ALJ then reflects upon considerable portions of the record documenting Plaintiff's medical history from 2008 until 2011. *See id.* at 15-17 (detailing medical findings resulting from consultations with Dr. Magurno, P.A. D'Angelo, Dr. Aravapalli, Dr. Desai, N.P. Pane, and Dr. Fang). The ALJ makes the brief assertion that Plaintiff engages in daily activities on a regular basis. *Id.* at 16. While the ALJ's opinion is devoid of further verbal treatment of her daily activities, *see id.*, the source citation offered as evidence and support for this statement is not. *See* Dkt. No. 9–7 at 46 (consultative medical evaluation performed by Dr. Magurno on August 17, 2009). In fact, when the document is examined in its entirety it accounts for several activities that may be fairly construed as "daily activities" Plaintiff engages in on a regular basis i.e., cooking, cleaning, child rearing, using a computer mouse, walking, standing, laying down, sitting, heel walking, toe walking, lifting, carrying, squatting, showering, dressings, smoking cigarettes, washing ones hair, stretching, wearing certain clothing. *See* Dkt. No. 9–2 at 44–49. Citing to evidence in the record, the ALJ concluded that "[t]he longitudinal medical evidence in the record . . . [u]litimately . . . do not support the [Plaintiff's] allegations of significant physical limitations." *Id.* at 16.

Plaintiff appears to initially object to the credibility determination on the basis that the ALJ did not specifically set forth language indicating that the Plaintiff's daily activities were considered in the credibility determination. This Court finds that, while the ALJ's decision does contain conclusory statements as to the credibility determination, the ALJ's decision was set forth

with sufficient specificity for this Court to identify the substantial evidence he employed in drawing his conclusion pertaining to the credibility determination. While the decision does not expressly state the amount of weight the ALJ accorded to the subjective accounts of pain Plaintiff provided, this Court finds it evident that minimal weight was accorded to the Plaintiff's subjective statements as the ALJ concluded that "the clinical findings and objective medical evidence in the record do *not* support the claimant's allegations of significant physical functional limitation." *Id.*

Plaintiff seeks to have this Court find the ALJ's credibility determination to have been made in error, for lack of specificity, on the basis he did not specifically attribute one of the enumerative factors listed in section 416.929 to each piece of evidence directly used by the ALJ as support for his credibility determination. It is readily accepted that an ALJ, "[a]fter considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, [ ] may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia,* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). The Court finds that the ALJ considered the appropriate factors and evidence in making his credibility        Plaintiff further contends that the failure to specifically address her limitations attendant to her engaging in daily activities is made more egregious due to her documented difficulty with medication. Plaintiff refers this Court to her initial brief, where she asserts that the ALJ erred because his decision made no specific mention of the type, dosage, effectiveness, or side effects of any medication that Plaintiff was taking at the time. Dkt. No. 21 at 4; Dkt. No. 14 at 18. The ALJ states that after a careful consideration of all of the evidence and underlying facts he did not find credible Plaintiff's testimony as to the severity and persistence of her pain and the attendant limitations she incurred. The decision exhibits a thorough analysis by the ALJ of the medical opinions, treatment records, and progress notes provided by P.A.

D'Angelo, Dr. Aravapalli, Dr. Kamlesh, Dr. Desai, N.P. Pane, N.P. Storrs, Dr. Magurno, and Dr. Fang. The evidentiary documentation utilized by the ALJ specifically includes observations of Plaintiff, her past and current condition, and treatments ordered by her physicians, and the Court is satisfied that the information was considered. The choice of which evidentiary basis to utilize, in a written opinion, in order to justify a decision to accord a reduction in probative weight to a plaintiff's testimony is up to the ALJ. "[A]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue*, No. 10-CV-1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (internal quotation marks omitted)).

Based on the foregoing, the Court finds Plaintiff's arguments to be without merit.


### *2. Misrepresentation of Plaintiff's Testimony*

Although "[i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant," *Aponte v. Sec'y Dept. Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982)), where an ALJ's credibility determination is based on so serious a misunderstanding of the claimant's statements, as they pertain to symptom or pain intensity and duration as well as the possible attendant limiting effects on their capacity to work, that the decision cannot be deemed to have complied with the evaluative requirements under 20 C.F.R. § 416.929, remand is required. *See Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010). However, where the ALJ has utilized an unwarranted assumption, formulated from statements of record, in his credibility determination, remand will

not follow when his determination is supported by other substantial evidence in the record. *See Rockwood*, 614 F. Supp. 2d at 272; *see also Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 83 n.26 (N.D.N.Y. 2005) (noting that an ALJ's incorrect rendition of facts in the record is nothing more than harmless error where his credibility assessment is amply supported by other substantial evidence).

Plaintiff specifically asserts that the ALJ misconstrued what little daily activities he did examine in a fashion that is "specifically prohibited by cases such as *Genier v. Astrue*, 606 F.3d 46 (2d Cir. 2010)." In *Genier*, the plaintiff filed an application for SSI and DIB on April 4, 2006. *Id.* at 47. He alleged that he had been unable to work since August 13, 2005, due to his morbid obesity and related ailments, including severe sleep apnea, back pain, and knee pain. *Id.* After receiving a negative disability determination and unfavorable judgements at the district court, the plaintiff appealed to the Second Circuit. *Id.* The Second Circuit found that the ALJ had relied on a serious misunderstanding of the evidence in his credibility determination. *Id.* at 50.

Based upon the plaintiff's testimony the ALJ had stated in his decision that the plaintiff "was able to care for his dogs, vacuum, do dishes, cook, and do laundry." *Id.* However, the Second Circuit found that the plaintiff "indicated on the questionnaire that he *tried* to care for his dogs, to do thing[s] around house [sic], like dishes[,] vacuum[,] etc., and to do his laundry, but that he required the assistance of a parent for each of these tasks because of his severe fatigue." *Id.* (emphasis added). In addition, the ALJ's decision erroneously attributed statements made by the plaintiff regarding his ability to do daily activities *after* he had received corrective back surgery and not during the period of disability. *Id.* The court found that the plaintiff's testimony did not contradict his assertions that he had been substantially impaired by pain and fatigue prior to his treatment and surgery. *Id.* The Second Circuit vacated the judgement of the district court

and remanded for further proceedings "because the ALJ's adverse credibility finding, which was crucial to his rejection of [the plaintiff's] claim, was based on a misreading of the evidence, it did not comply with the ALJ's obligation to consider 'all of the relevant medical and other evidence,' 20 C.F.R. § 404.1545(a)(3), and [could not] stand." *Id.*

Plaintiff argues that the case before the Court is analogous to *Genier*. The testimony relied upon by Plaintiff is as follows: "ACTIVITIES OF DAILY LIVING: She says she cooks, cleans, does laundry, shops, and childcare if she can. It is painful. Her boyfriend and children help. She showers as needed daily and dresses daily, but it is painful and sometimes she cannot. She watches TV." Dkt. No. 9–7 at 46. Plaintiff stresses that the failure to specifically address functional limitations attendant to her performance of daily activities, as described in her evaluation with Dr. Magurno on August 17, 2009, amounts to the type of misrepresentation of the facts that the Second Circuit found so egregious in *Genier*. Dkt. No. 21 at 4.

This Court disagrees. In *Genier*, the ALJ took statements made by the plaintiff of what he *tried* to do and in his decision quoted them as what he *could* do. *Genier*, 606 F.3d at 50. Due to the crucial nature of the testimony as it pertained to the determination of the plaintiff's credibility, and its ultimate rejection, the Second Circuit found that the error was so gross that it amounted to the dereliction of the "ALJ's obligation to consider all of the relevant medical and other evidence." *Id.* Here, the ALJ has accurately described Plaintiff's statements and afforded them appropriate consideration. In his decision the ALJ states that "[t]he claimant is a thirty–two year old female who reportedly resides with her boyfriend, cares for her three young children, and participates in activities of daily living on a regular basis." Dkt. No. 9–2 at 16. The ALJ has taken statements made by the Plaintiff about what she asserted she *can* do, together with the credible medical evidence, and accurately described Plaintiff's capabilities and limitations.

Based on the foregoing, the Court finds the ALJ's credibility determination is amply supported by substantial evidence, and was made in accordance with the applicable law. *See Rockwood*, 614 F. Supp. 2d at 272.

### 3. Factors Required in a Credibility Determination

Plaintiff contends that the ALJ erred by not specifically making mention of any of the other factors required in a credibility determination. As the Court concluded above, the list of relevant factors to be evaluated is more appropriately interpreted as an illustrative list and an ALJ's decision is only required to contain sufficient specificity to allow the reviewing body to understand the reasons for the ALJ's decision. SSR 96–7p, 1996 WL 374186, at *2. Plaintiff's argument would have an ALJ include in each decision a tabulation of all the relevant evidence, the weight attributed to each, and the reasons for the attribution. The mandate stated in SSR 96–7p does not require the ALJ to be so exhaustive in his credibility decision. The threshold to be met by his credibility determination is that it must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *2.

The ALJ, in his decision, considers a significant portion of the record documenting Plaintiff's medical history from 2008 until 2011, *see* Dkt. No. 9–2 at 15-17 (detailing medical findings from consultations with Dr. Magurno, P.A. D'Angelo, Dr. Aravapalli, Dr. Desai, N.P. Pane, and Dr. Fang) and effectively compared those instances against Plaintiff's own statements made during her evaluation by Dr. Magurno and at the administrative hearing, *see* Dkt. No. 9–7; Dkt. No. 22–25. On the basis of this comparison the ALJ found that Plaintiff was partially

credible, insofar as her medically determinable condition could reasonably be expected to cause her pain symptoms. However, the ALJ also found that the objective medical evidence of record did not support Plaintiff's allegations of severity, persistence and significant physical functional limitations. Dkt. No. 9–2 at 16–17. This Court finds the ALJ's reasoning was sufficiently specific and in line with the appropriate standard.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Hummel's October 3, 2013 Report-Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: February 27, 2014
      Albany, New York

Mae A. D'Agostino
U.S. District Judge